The first argued case this morning is Number 18-2232, Kaken Pharmaceutical Co., Ltd. v. Iancu. Mr. Livingstone, proceed. Good morning, Your Honors, and may it please the Court. A critical issue before the Court is the Board's erroneous construction of the claim term onychomycosis to include infections of just skin and visible mucosa. That construction was pervasive throughout the final written decision and is wrong for at least three reasons. First, it's at direct odds with the specification. Second, it's at direct odds with the prosecution history. And third, it is contradicted by the petitioner's own expert's admissions. Let me begin in the specification. The term onychomycosis is stated in the, or described in the specification as an infection of the nail. And in term, the term nail is defined as the nail plate, the nail bed, the nail matrix, and further, these other things that surround it. Can I ask you a question? Is the nail bed considered skin? I believe the nail bed would be considered a skin-type organism. But there's nothing either in the patent or the record of this case that answers that question one way or the other. I don't believe so, Your Honor. So the specification doesn't say that onychomycosis is an infection of every single part of the nail, and it doesn't say that onychomycosis is an infection of any single part of the nail in isolation. But the claim uses the term onychomycosis broadly, right? It doesn't say some subset of onychomycosis. It does not. It does not. Right. And then you define nail to include all of these things. And so how can you then say, well, it's an infection of only a portion of the nail? Well, because the nail is not, you can't conflate the terms nail and onychomycosis. And the nail, while it is a structure that has many different elements, throughout the specification, throughout the prosecution history, and it's understood by those of ordinary skill in the art, onychomycosis must include more than just an infection of a piece of skin. It must include infections of the nail plate and nail bed. And that's pervasive throughout the prior art. Yeah, the nail bed part is the part that, I mean, clearly you have to But couldn't that penetration then be for purposes of treating some other portion of the nail? Well, I think there's a couple different things here. Some onychomycosis exists in the nail plate. So you need to permeate the nail plate just to identify and treat the infection there. But the more tougher parts of onychomycosis, or types of onychomycosis, also exist in the nail bed. And to get there, you have to penetrate through the nail plate to eradicate the infection at the site of disease, which is really the conversation we had with the patent office during prosecution. Well, I saw that portion that you're citing as the prosecution history that you say is important. But the only thing that I gleaned from that is that you explained to the examiner, and the examiner accepted the proposition that you have to actually go through the nail. You have to be able to penetrate the nail. But there's nothing in that discussion that says that the only reason you're penetrating the nail is to get to the nail bed. Well, it's not just to get to the nail bed. It's also to treat the infection in the nail plate where it sometimes resides. And a part of that discussion is looking at prior art where there were topical formulations for treating mycosis generally, which is just skin disease, athlete's foot, ringworm. And the examiner admits this permeates the nail bed. It gets to the nail plate, and it can eradicate the infection. And why would permeation be important if it was just simply related to a skin structure on the side of the nail? Permeation would make no difference. And if you look at the specification throughout, there's a differentiation between skin and nail. Start though with a portion of the specification. If we're trying to figure out what onychomycosis is, we start with column nine where it says it means something. It means a kind of the above-mentioned superficial mycosis. And then if you go to column five, line 20, mycosis means a disease which is caused by the invading and proliferating in the tissue of humans or animals. Usually, mycosis is broadly divided into superficial mycosis, so that's the one that we just said onychomyosis is a subset of, where the seat of the disease lies in the skin or visible mucosa. What do you do with that? Well, I think there's a couple pieces there. First, you rightly note that superficial mycosis is an umbrella term that includes within it onychomycosis. The board found differently. The board found that onychomycosis was the umbrella term that include all superficial mycosis. And that's, I think, objectively incorrect. But did that finding really matter to their ultimate conclusion? I think it did. The final written decision probably mentions 10 times that it dismisses arguments of record based expressly on its claim construction. And that's very clear in the final written decision. At the level of the question, is onychomyosis, can that be a fungal infection only of skin? No. Why? And I'd like you to start with the very sequence of definitions that I just asked you about, which ties into my earlier question about the bed is the skin. Because that would be an answer for you. So onychomycosis is defined as a kind of superficial mycosis that infects the nail. The nail is defined as a number of different structures. One of ordinary skill in the art doesn't look at that and think, it must be all of the structures. And they don't think that it must be a single structure. And so where are they left? So let me just try to be, what to my mind is a little bit more precise. The column nine sentence on onychomyosis says two things. It says, means a kind of the above mentioned superficial mycosis. So that's one thing. Then it says, in other words, translating here a little bit, a disease which is caused by invading and proliferating in the nail of human or animal. That seems to me to direct us. The first clause directs us to the mycosis, superficial mycosis definition. The second clause directs us to the nail definition. Can you tell me something about the first clause before talking about the nail definition? Only that onychomycosis is a subset of superficial mycosis. Skin. Superficial mycosis includes anything on the outside. Well, it says expressly in column five. Skin or visible mucosa, which would be your mouth or nostrils, right? And I think it's clear that onychomycosis does not include infections of your mouth or nostril. Does it involve the nail bed? I'm going to, nail plate or nail bed? Is the nail plate skin? Nail plate includes keratin, but it's extremely different from the keratin composition in skin. It's not called skin. And the nail bed? Nail bed, I'm not sure the composition of the nail bed is in the record, but nail bed is certainly a seat of infection in an onychomycotic model. It's why they continually talk about penetrating the nail plate to get to the nail bed because that's where... Is that the only portion of the nail that can ever get infected? Of course not. In very bad cases of onychomycosis, every portion of the nail can be infected. We're not saying that our claim construction excludes those, but a single portion on the outside of the nail, hyponychium for instance, as the only thing being infected is a term by doctors called peronychia. It's an entirely different disease state. Peronychia is a subset of onychomycosis. No, it's not. It's a totally different disease state. There's at least expert testimony to that effect, right? I don't believe so. All the testimony has been that peronychia is a separate disease state. When you come in to a physician and you say, I've got infection around my nail, they say that's peronychia. They treat that one way. When you have an infection that includes the nail plate, as described in the prior art and as seen by physicians, that's an onychomycotic infection. Is this the aspect of the claim construction that you propose to resolve by a narrowing reissue? That is part of it, yes. We have proposed claims in the reissue to avoid any of these issues under the claim construction of the board. Exactly. And so had that reissue been entered as you requested, would we have this question before us? I think we would. I think we would because we're entitled to the broadest scope of our claims. And while those claims are more narrow, we consider the board's claim construction to and not grounded in the specification, intrinsic evidence, and the other art of record. And I think when you're looking at the patent and you wonder, how does one of ordinary skill in the art look at the patent? Because that's really the question, right, under the Phillips. You have to look at the patent for one of ordinary skill in the art. The best evidence is probably the petitioner's own expert. For this proceeding, looking at the 506 patent with the eyes on filing an IPR, that expert said the disclosure of superficial mycosis in the patent does not describe treating onychomycosis. That expert looked at the comparative examples in the specification that relate to skin treatment and said those don't relate to the treatment of onychomycosis. That's at AP 1031. So you said an expert said that onychomyosis is not a kind of superficial mycosis? That's, I apologize if I said that. That's not what I meant. It's clear that onychomycosis is a subset of superficial mycosis. Not the other way around. And that's what the board did. They construed the claim such that onychomycosis includes superficial mycosis, which would include things like visible mucosa, which is mouth and nostrils, and things that clearly aren't related to the nail. Didn't your own experts say that onychomycosis generally begins in the skin structures around the nail? Yes. Typically in a patient, they get athlete's foot, they don't treat it, and it can invade and proliferate into the nail bed or through the nail plate and become onychomycosis. Okay. But it says, so you're saying that it's not actually onychomycosis until it goes through the nail plate? That's right. And I think that's consistent with both what our expert said and what Dr. Walter said. He said you can have an infection of the hyponychium that can become onychomycosis, but until it gets into the nail plate or nail bed, it's peronychia. It's a different disease state. Another admission by Dr. Walter, it's related to claim construction, is that he looked at the skin examples in the patent, and he said those treatments of skin don't relate to onychomycosis. And that's one of our areas of skill in the art, looking at the patent objectively in this proceeding and saying skin doesn't relate to nail. They're just not the same. And that's why we proposed the construction that's consistent with both the desire to permeate the nail plate to get to the nail bed and eradicate the infection where it resides, which is a penetrating infection of both the nail plate and or nail bed. Let me, that last point. In briefing below, you said nail plate and nail bed. And then in our briefing, you have the and or language. Is that a meaningful difference? Um, I think it is because there are, you know, there are instances of onychomycosis. Almost every single one involves the nail plate, but there are other more difficult to treat portions that our claim should cover that also involve the nail bed. And there are instances... Wasn't your claim construction based on the fact that you needed both? I don't think you have to have both. I don't think you have to have both. There are types of onychomycosis that are just involved in nail plate. Okay, and then what else do they involve? Just the plate? So if you look at our expert, Dr. Lusky, in 1999 wrote a review article on onychomycosis. She's the only expert of record that had done that, and she defines all types of onychomycosis. And each definition includes at least a nail plate. Some include a nail plate and or a nail bed. So with my remaining time, I'd like to go to the substantial evidence question. Okay, do you want to save your time for rebuttal, or something you need to show us? I've got two minutes left, Your Honor, if you'll permit me in my opening. Okay. Do I not? Is this clock including the rebuttal time? It usually does. Okay, then I will save it. Thank you, Your Honor. Good morning, and may it please the Court. As plainly set forth in the specification, Katkin's claims cover treatment of the skin surrounding the nail with eficonazole. Eficonazole was known to be effective against skin infections, and thus the claims are obvious. Let me ask you, what claim do you want us to review on appeal? The narrowed claim that they have been trying to enter into this case through reissue, or what? No, Your Honor, I think it has to be the claims that were at issue in the IPR. So, as we said in our 28-J, the office has just begun examination of the reissued claim. So, you want an advisory opinion from this Court on the broader claim, after which the office will decide whether to proceed with a narrowed claim, which they're entitled to narrow as of right? So, Your Honor, I don't think it would be an advisory opinion, because, as my colleague on the other side said, they are still seeking these claims. They're entitled to a reissue. The statute says the director shall reissue. It's not permissive. So, they're entitled to the reissue. And yet, you have refused to permit them to do that in a timely way. No, Your Honor. I mean, they may be entitled to the reissue if their claims are patentable, but that's, of course, what the examination... I don't see any such if in the statute. The statute is crystal clear that you pay the fee, you meet the requirements, and the director shall reissue the patent. Not if we feel like it. Not if some other tribunal decides it's inconvenient. To be sure, Your Honor, if the claims are patentable, then they would be entitled to the reissue. So, why are you asking us to decide a claim that they have the right to change? So, Your Honor, they are still... They still believe they're entitled to the claims that are before the court today. We do not believe they are entitled to those claims. They had no choice. You refused to go forward with a reissue until, according to what you wrote to us two days ago. Well, Your Honor, I understand that they would still want these claims, even if we were to potentially grant the reissue. So, I don't know that that's necessarily the case, Your Honor. And we are proceeding with the reissue. The reason for the delay was simply the office's workload, and it doesn't make sense. The statute doesn't say that if you're busy, you can refuse to proceed with a reissue. I can't find that in the statute. I just looked. Well, Your Honor, I don't think the office was refusing to proceed with reissue. I think it's a fairly well-established principle of administrative law that agencies can sort of decide when they act on particular... They actually put a stay on. That's different than not getting to it. Well, they put the stay on it out of concerns for workflow. And so, if this court were to decide that they were entitled to the claims at issue today, then that would obviously inform the course of the reissue. And there are other applicants that the examiners are working on their applications right now. And it's a question of, are they going to focus on this application, which may become moot depending upon what this appeal is, or the examination proceedings would go differently depending upon the outcome of this appeal, or are they going to work on the applications of the other applicants before the office? So, I don't think it's a question of us refusing to. I think it's a question of efficient allocation of resources. Refusing is crystal clear. You say we stay. We're not going... Did you refund their filing fee for the reissue? Not to my knowledge, Your Honor. But, of course, we are proceeding with the examination. As the Federal Register notice lays out, it's a matter of efficiency, and then we give applicants the opportunity... Well, that notice is contrary to the statute. Statute doesn't say if you feel like it on a three-page notice of contingencies. It says, shall reissue. Yes, Your Honor, shall, but it's a question... Shall process the reissue if it complies with the statute. A narrowing reissue is what I gather they're asking for because of the breadth of the claim construction. Yes, Your Honor. But, of course, it's a question of whether or not those claims are, in fact, narrow or whether or not there's some other problem with patentability. That's what the... Precisely. They're entitled to an examination of the reissue. There are no safeguards of this sort. There are no contingencies in that statute. Shall reissue, and yet twice you have stated... Yes, Your Honor, but, of course, it's... Asking them to proceed with this appeal on claims, broad claims that they have been trying to narrow for how long, a year, two years? I believe they filed the reissue application in 2017. But, of course, Your Honor, the fact that they're entitled to a... The fact that they may be entitled to a reissue patent doesn't mean that the office is obliged to, or even could, act immediately upon every application. Of course, we would... Does not the board have authority to stay there? I could see where the director might say, you guys are too busy, so we're not going to do this, this, or that. But the board doesn't have any authority to tell the examiners not to act according to the statute? Under 315, Your Honor,  when there's a... It's not in the statute? It says the director shall, on the surrender of such patent, and the payment of the fee required by law, reissue the patent. Doesn't say if the board feels like it. No, Your Honor, but... Were you talking about one of the IPR provisions in 315? Yes, Your Honor, I'm talking about in 315. Not in the reissue provision. It doesn't say if it happens to be under IPR review? That statute was not amended to provide all that? I would point, Your Honors, to section 315D, multiple proceedings, which says that notwithstanding various other sections, including, I believe, the reissue proceeding, during the pendency of an inter partes review, if another proceeding or matter involving the patent is before the office, the director may determine the manner in which the inter partes review or other proceeding may proceed, including providing for a stay, transfer, or consolidation. So that is, and I believe that authority of the director has been delegated to the board, which is why they issued the stay. And then when it came back to patents for their own workflow reasons, they put on the suspension. But the IPR is not pending once the final written decision is issued, right? No, Your Honor, that is their argument. I don't think that's right. Because, of course, after a final written decision issues, there could be a panel afterwards for the director to review the case. There could also be an appeal to this court. But more importantly, I think that issue is moot because, of course, the stay, the suspension that they were complaining of in their reply was issued by patents, which has nothing to do with the pendency of the IPR, necessarily. And then, of course, that has been lifted and the reexamination is going to proceed. So why was this reissue application stayed twice? Your Honor, I believe it was because of the workload of the office as the board was of the view that, look, we're adjudicating these claims. If we decide that these claims are patentable, then that could moot the reissue application and obviate the need for further examination and expenditure of those resources. And then when patents got it, they felt the same way. Of course, under the Federal Register Notice, it does provide applicants a way to petition the office to say that, look, our claims are colorably different than the ones that are proposed reissue claims are colorably different than the ones that are at issue in the IPR proceeding. And so we request that you proceed with the examination. But they did petition, did they not? And they were denied. No, so they petitioned in September and the lifting of the suspension that occurred last week was the decision on that petition. So it's expeditious processing within the time limits that the entire policy here is that there will be some sort of expediency in the way the office handles applicants. Yes, Your Honor. And the stay was originally put on for six months, I think precisely so that it would pop up again and the examiner would have to relook at it. And of course, this happened in less than that timeframe. Admittedly, it would be good if we could get to applications even faster than that. But this was them acting on the petition. Yes, I don't see all of that. You said that 315D expressly includes the provision that relates to reissues.  To be honest, I said, I'm not sure, Your Honor. I think it does, but I'd have to look up the other provisions that are cited there. Well, I would think you'd know the provision when you came here. It doesn't, does it? To be honest with you, Your Honor, I am not positive. It cites 251, which actually is reissue, yes. So, Your Honor, it says notwithstanding sections 251 and then 251 is the section dealing with reissue. Okay, can I ask you, can we turn to the, yes, okay. Of course. So, your brief in this case seemed to me to make a case for the correctness of the unpatentability ruling barely dependent on this claim construction, to make an argument that I think downplayed would be an accurate word. I'm not, well, I guess it seems to me that the board relied on its claim construction in a pretty pervasive way and hasn't really made a determination of unpatentability independent of the claim construction. And just on that assumption, it seems to me, therefore, the case comes down to the claim construction. So, which I'm not sure you directly defended in your brief. What do I make of that? Well, Your Honor, so I would, to be sure, our brief did not include a separate heading for claim construction, but pages 33 through 35 of our brief make the claim construction argument. And I think the claim construction is actually not terribly difficult because if you, I would point the court to where the court was before column nine. It says that onychomycosis is a kind of mycosis proliferating in the nail. So, what you just did was to skip the first clause. Everybody, nobody wants to talk about the first clause. Why? Well, I think the first clause is helpful. I think the second clause is even stronger. But if Your Honor would, if it would be helpful, I'm happy to talk about the first clause because the first clause talks, it says it's a type of superficial mycosis. The reason I guess I'm focused on that is it seems to me it's relatively easy textually to take the second clause and say it proliferates in the nail. That doesn't mean it proliferates in every component that was in the nail. So, that doesn't seem to me to compellingly say it covers even certain kind of fungal things in the skin. The first one, though, seems to say it is a kind of skin mycosis. I think it's both, Your Honor. It does say skin mycosis. And superficial and superficial is skin or mucus, right? Precisely. But then I think it's also important to look at the definition of nail. So, if you look at page four, I'm sorry, column four of the patent, Appendix 64, it lists, among other things, eponychium and hyponychium. And on page nine of their brief, they concede that those are skin structures and their expert made the same concession. The other thing I would, here's, let me see if I can convey this. If I say a disease invades the nail, that language by itself doesn't mean anything more necessarily than it invades some portion of the nail. And so, this may be a plate-only disease. I'd still say it invades the nail. Where it may be a matrix only, it doesn't mean that language by itself that anything that, any component that is part of the nail is one that this disease invades. Well, I think, Your Honor, you need to look at the definition of nail in the specification. That might be true in ordinary parlance. If you said, I have an infection in my nail, an ordinary person on the street might think of nail plate. But here, when the definition in the specification describes particular structures that include, by patent owner's admission, skin structures, and then you have evidence in the record that it would have been obvious to treat this, to treat a skin infection with the claimed compound, I think that gets you there. The other thing that I think it's important that I don't wanna forget is if you look at Appendix 40, which is in the decision, the board references their expert's admission that superficial white onychomycosis would have been easy to treat with any antifungal compound. That's a yes, scrape it off the nail. Yeah, and even if you accept their definition of plate, the superficial white onychomycosis is part of the plate. So... What do you do about the fact that the board clearly aired when it said onychomycosis includes superficial mycosis? I think when you read the... It would have been better if the board was clearer. I think when you read the board's decision in context, that's not what they were... Well, it's clear, it's the other way around, right? Yeah, absolutely, Your Honor. Onychomycosis is a subset of superficial mycosis. They said it more than once. They said it backwards more than once. I agree that they did get it backwards more than once, but I think when you read the full context of the opinion, that's not what the board was saying. What about your friend on the other side said that the expert testimony was that while this onychomycosis, the infection can begin in the skin structure surrounding the nail, but it doesn't really become onychomycosis until it invades the nail plate? He's relying on extrinsic evidence to reach that conclusion, and I think in light of the definition of nail here, which of course, Philip says you have to look at the specification definition first, that that would supersede it because the definition of onychomycosis is mycosis affecting the nail. Nail here includes skin structure. But what about the prosecution history? That's pretty limiting, isn't it? So the prosecution history issue was not raised before the board, and moreover, I would also say that Philip still says you look to the specification definition first. I think I remember, right? Your brief did not discuss the prosecution history. I don't believe it did, Your Honor. I searched for 1589, 1607, 1609 prosecution. None of those came up. No, I don't think so. But again, Your Honor, Philip says you must look to the definition of the specification before you get even to prosecution history, let alone the extrinsic evidence. But suppose I thought, for textual reasons, that the specification was a bit of a mixed bag. I would be inclined, I think, to find the prosecution history in this matter extremely strong for Kakin. Kakin or Kakin? I, Kakin. Kakin, Kakin, of course. I looked for a pronunciation guide online. I couldn't find it. I would say a couple of things about that. I don't think we're denying that it would be a good thing to be able to penetrate the nail. Of course, here— But this was the ground for distinguishing, was it, the 944, the earlier patent which was asserted in support of an obviousness-type double patenting claim. And they came back and said, the difference is that ours actually penetrates the nail. And then the examiner came back and said, oh, now I allow it. And he referenced the reasons for allowance, which, I don't know, three times said, the thing that's persuading me here is we are talking about a claim that involves penetrating of the nail, of the nail plate, sorry. I think another trouble with that, Your Honor, is that they even admit that superficial white onychomycosis is a type of mycosis and that that shouldn't require, that doesn't require penetration of the nail. So even on their own, by their own inclusion of that— It's a type of onychomycosis? Yes, superficial white onychomycosis is a type of onychomycosis that does not require penetration of the nail per their expert submission, Appendix 40. Is that because time has not, enough time hasn't passed that it hasn't yet started digging in? Potentially, Your Honor. I don't think there's anything in the record about how likely superficial white is to proliferate elsewhere into the nail. There may be a number of factors. I don't think that's a question of record. But nevertheless, that is squarely within the definition of onychomycosis. They concede that on their brief at page 15, note two. Given that, you don't need to penetrate the nail because of its superficiality. So when you take the definition, the broad definition of nail that includes things that they admit are skin structures and also at reply six, they're not conceding, they're not appealing the definition of nail. And then when you also look to the superficial white, I think all of that would outweigh whatever they have in the prosecution history. What are we to make of this? You tell us of their concessions. You have agreed that there is a clear error in the board's decision, which you correct an oral argument in the federal circuit is remain in silence. Otherwise, I mean, this is, it's important that we make sure that this system, this new system under the American Vents Act operates as it's intended, not as a game between protagonists. And I'm concerned, as you can see, as to the role of the office and of the board in seeing that this public policy is fulfilled. Your Honor, I also share your concern with making sure that the statute functions as intended. I think that's why it's also important to focus on the text of the specification, because I think it would be quite unfortunate for patent owners if, you know, extrinsic evidence about what, you know, doctors may or may not have thought controlled the definition as opposed to what is squarely in the specification. Because, you know, as Philip says, and as makes sense, you want a person of skill in the art to be able to read the specification and understand the invention and the scope of the claims. And if you have to go digging through, when something is as crystal clear as this, and you have to go digging through the prosecution history or even worse, extrinsic evidence to figure it out when there's a plain on its face definition that includes skin structures, I think that would be- That's where the reissue comes in. And yes, Your Honor, and we are proceeding with the reissue. And they, as the patent, as the office's decision said, they have colorable arguments that there may be something patentable there. And we're going to proceed with the reissue application expeditiously. And, you know, we've lifted the stay and are going to proceed with it. Thank you. And will you enlarge Mr. Levinson's time by the amount we've run over? I think we've come to eight minutes. Thank you, Your Honor. It's very generous of you. We're under BRI, right? What's that? You're stuck with BRI, isn't it? I am stuck with BRI, you're right. And again, it seems to me that that's where reissue comes in. It's one way of overcoming this curious imposition of BRI post-grant. That is one way, Your Honor. But I think that we submit that BRI still must be reasonable. And the claim construction, I think as just admitted, is unreasonable in light of the specification. What do you do with the white superficial chromicosis that your expert talked about? It certainly involves the nail plate. And there has been no factual finding on the record under a correct claim construction that you can go from skin to nail and efficacy. And that's at appendix 40. The board even called that a leap. They said requiring one of ordinary skill in the art to make such a leap is unnecessary in light of the breadth of the claims. There has been no factual findings under a correct claim construction on any of those issues. That was assumed based on an incorrect and overly broad claim construction. You discussed a second ago the prosecution history. I agree it's pretty clear. But I would submit that if we were arguing today the opposite of what the director is arguing, that is we're seeking to prove infringement of a claim that has onychomycosis, and we're seeking for it to cover just an infection of skin, those comments in the prosecution history would be limiting. They would be seen as limiting our... Do you think they qualify as a clear and unmistakable disclaimer? You know, it would be really close. It would be really close, and I would expect my opponent to argue it. That's for sure. And so I think that that's got to be part of this claim construction process when you have those statements that clearly define the invention in a very clear and intimate way in terms of penetrating the nail plate, permeating the nail plate, and getting to the seat of the disease at the nail bed. Going back to the skin question. Again, you're saying we don't necessarily need the nail bed. You don't necessarily need the nail bed. We just need to penetrate the keratin in the nail. That's right, right, that's right. Going back to the skin mycosis issue, if you look at column four, which I think where you were, Judge Toronto, there's a definition of skin, and it's a overly broad definition, and perhaps it's even more confusing, but this broad term skin is really used to indicate anything on the outer surface of the body. And it specifically says that it includes pilus, which is hair, nails, glandular species as appendages. And so when you're talking about superficial mycosis, you're not just talking about skin. You're talking about any type of infection on the surface of the body as opposed to a deep mycosis that would be internal in your organs or in your lungs or otherwise. Can I ask you a question about reissue? Absolutely. When you submitted your reissue application, did you say here are claims we want to cancel, here are claims we want to amend, here are claims we want to add, or did the process not get far enough for you to do that, or what? So we filed our reissue application about a month after the petition was filed. In it, we included a preliminary amendment that amended claims and added new claims. Actually, I'm sorry. I don't think we amended any claims. We kept claims one and two. You kept claims one and two. So you still want those? We definitely still want those. But after the final written decision, we assumed that the reissue would be lifted because every single other order and case in the docket had. We filed a new application, or a new preliminary amendment, which canceled the two claims to get over the estoppel provisions and added a more narrow set of claims that focused specifically on just the nail plate and the nail bed. Thanks. If there are no further questions. Okay. Any more questions? Thank you. Thank you both. Thank you, Your Honor. Case is taken under submission.